Good morning, Your Honors. May it please the Court. My name is James Friedhofer. Together with my co-counsel, Samuel King, we represent the appellant, Patrick Shin. I'd like to reserve two minutes for rebuttal if I could. That's your clock. Thank you. Both parties today on this appeal agree that whether Shin established the fourth element of quorum nobis is what this case is going to turn on. We've presented two independent grounds for this. I would like to first focus on the Escobar issue. What is the fourth prong? The fourth prong is whether the guilty plea in this case was impacted by an error of the most fundamental character. But leaving aside the error, is there any case in which something like this was considered a most fundamental nature? It needs 50 pages of briefing to explain a fine-cut difference between two materiality standards that don't seem very different. But even if they are different, they aren't very different. Is that an error of the most fundamental nature? I would say another way that it's been referred to by this Court is an egregious legal error. And I would say that from the progeny of the Escobar case, I think that there is certainly there's not a uniform opinion on this with all the justices. But many courts have said that this is a change. It is a significant change. It's a heightened change. But I'm more interested in the quorum nobis standard. Tell me about a quorum nobis case. I mean, quorum nobis is extremely unusual. This seems like fairly routine, the kind of argument that you would make in a fairly routine appeal. What quorum nobis cases there, which has found any distinction like this, assuming it's a distinction, one that would merit quorum nobis? I draw the analogy with the cases post-skilling, the skilling cases. Are those quorum nobis cases? The U.S. v. Lynch, which I go through, is a quorum nobis case. There were a number of cases where post-skilling, when the — and as you recall, that was not a change of statutory language. That was simply a change of the court's interpretation of what was required under that statute. But it was basically determination that you can no longer be held criminal for having done X. And it wasn't a change in, you know, the interior standard within a standard. It was what you're talking about here is the difference between — I'd like you to articulate what the difference is, but whatever it is, it's not. There's still a materiality standard, and it may be slightly different. But that's about it. I would argue that it's more than slightly different. I know that, particularly referencing the new case that came out that we had called to your attention, the Stevens case, there's sharp differences whether this is just a gloss over the materiality analysis or it effectively overrules cases. Judge Smith, in his dissent, said that it effectively does overrule this, and there must be a completely new materiality analysis. And that is the trend, it seems, in the post-Escobar cases, that they are there. And I would say that there are a narrow number of cases where materiality and the very fine — you know, the very fine-tuning of the materiality definition makes the world of difference. It makes the difference between guilt and innocence. For instance, I believe that a fair reading of this is that now, after Escobar, the materiality standard is not focused simply on whether the condition was made, whether the question was asked, but on a fact-specific type of inquiry into the facts underlying the decision-maker's decision and whether the false statement had anything to do with it. In particular, I'd like to focus on the element of the magnitude of the violation. Under prior Ninth Circuit authority, in the U.S. v. Ficini case, we discussed this, and you'll find this on pages 37 and 47 of our brief, I quote, where in U.S. v. Ficini, it says that basically that the magnitude of harm has no relevance to the materiality standard. That's a pretty definite statement. And then, in Justice Thomas's opinion in Escobar, he says it does have some relevance to it. And now fast-forward to the Stevens opinion, which just came out, and there is a whole section that this Court is analyzing the materiality standard under the magnitude of harm. That's a substantial difference when, at one point, at the time — I mean, this was a difference of several hundred thousand dollars. Now, I understand that your argument is that, for some reason, the government wouldn't have cared about this several hundred thousand dollars. But — No. No, that's not our argument at all. As a matter of fact, in the sentencing phase, we know that there was no $100,000 difference. There was no intended loss. It was zero. And that raises — I'm sorry. I don't really understand that. There was a change made in the invoices of several hundred thousand. The government asked for the invoices, and what they got was not the right invoices, but ones with a couple hundred thousand dollars changed. Presumably — Just a minute. Presumably, the government was asking for these invoices because they cared about what they showed. And what they showed was not truthful. Now, you're saying that the government wouldn't have cared if the invoices were $100,000 or $200,000 less, and also wouldn't have cared that somebody was doctoring them. Why? Yes, Your Honor. That actually dovetails into the second issue, which is the exculpatory evidence that was learned afterwards, because it is true that they cared enough to ask about it. And under the former materiality analysis, that would have been it. But now that is simply relevant to the materiality aspect, not dispositive. So your notion is that as a general matter, not the particular guy, that the government officials wouldn't care if somebody was giving them a completely fraudulent response to their answer, to their question. Well, it was a false statement. However, the exculpatory evidence. It's worse than false. I mean, it's one thing to lie. It's another thing to take a whiteout and change a document from somebody else and show it as being $100,000 or $200,000 more than it was. So it seems to me that would be disqualifying right there, even if the amount of money wouldn't have mattered. You're correct under the old materiality analysis, but not under the new one. You look to the decision. How material was this to the decision-maker? And we actually know that because – No, I thought you looked to how material it would be to an ordinary decision-maker, not necessarily to the decision-maker. Oh, that's actually not the standard at all. Oh, really? Yes. I can – yes. It's a subjective question of what the particular decision-maker would have cared about. Yes. When it is the – when the target of the false statement is the government, that is a standard which, in the case cited by the government, U.S. v. RAZA, they distinguish when it is a government entity, they use the language that's arguably subjective standard. You look to the decision-maker. When it is a public – like a private entity that is the target of the statement, that's when it's arguable whether it's objective or not. That is stated right in the U.S. v. RAZA opinion, and it's the correct statement of it. And that's why when we – when you look at the declaration of the decision-maker in this case, who is Mr. Hukama, he said that even if I knew of the false statement, I would have approved this contract. So, yes, we have this rare instance where the whiteout was done and the decision-maker says that. Now, that doesn't conclusively prove that he's innocent, but it now, under the new materiality analysis, it is now arguable. It is relevant. And since that game has changed between the time that he pled guilty and now, quorum nobis says that you must allow him to go back and, in this case, simply withdraw his guilty plea. And then if the government believes that it can charge him and it can, under the new materiality analysis, it's free to do so. And what remaining time I have, I'll use on rebuttal. Thank you, counsel. Thank you. Good morning. May it please the Court, Larry Tong for the United States. Judge Berzon, I think you've pretty much encapsulated the government's theory of the case as well as the facts here. In brief, Escobar may have put a subtle, nuanced change on the law of materiality, but it's in a particular context that is not applicable here. Escobar basically reaffirmed all of the traditional concepts of materiality. It cited the leading Supreme Court cases, Cungus and Nader, for the proposition that a statement is material if it has a natural tendency to influence or the capacity to influence. We've been told it's a distinction between private and public recipients of information as to whether it's a subjective or an objective test. Is there any authority for that? I see no authority whatsoever. The Raza case did have a line saying that where the government is the receiver of a false statement, the standard may verge to a subjective one. But in the end, that court, I think the Fourth Circuit, applied the time-worn traditional test embraced by this circuit and every other circuit and characterized as a familiar one by Justice Thomas. It said we look at an objective test looking at the intrinsic capabilities of the statement. But Escobar did relax that to the extent that in looking at evidence of how the federal government would treat the statement, you could look at the federal government's past treatment of that particular statement as evidence. It did, Your Honor, but in a very unique context. Well, I mean, I know you're trying to say it's a unique context. I'm trying to see the analogy to this case. I'd like to elaborate. If I can elaborate, perhaps I can make that a little more clear. Here we have testimony that says they would have paid it no matter what because the year was running out. They were running out of funds, and this is what they did when they were running out of funds. And if you accept my friend's argument, then basically that would supplant the traditional standard of objective reasonable decision-making with a capacity to influence by a subjective standard based on the idiosyncratic decision-maker, which is not what's contemplated by Escobar or any of the cases. But isn't it true that the general government in general, I mean I'm trying to just think back on our own budgeting practices, like toward the end of the year all of a sudden there's money that can be spent for certain things? I'm not denying that there are fiscal pressures to spend money when they're allocated, but the issue here is Escobar talked about the federal government's consistent handling of claims as being indicative of whether or not they are material. It arose in a context of a civil claim for liability under the implied false certification theory. That's a theory where a contractor promises in advance to the government that as a condition of participating with your program, I will comply with your program rules, your statutes, your regulations. Then they submit a claim that is not false on its face, unlike ours, not false on its face, but which fails to disclose something, and the thing that is left out makes that claim misleading. And the court in that context says we have to have limiting principles in a Civil False Claims Act case to avoid having expansive liability for a civil contract claim. And what we're going to do is say where the government applies uniform regulations and rules in the handling of claims, it may be of interest how the government typically treats noncompliance with something. Our case is very different. Our case is more akin to Lindsay, which is binding precedent and post-Escobar out of this circuit. In our case, basically, we have affirmative lies, as Judge Berzon said. We have a negotiation over the price of a contract, whether to award it and how much to pay. The government asks how much are your costs because we want to know what your profit is. Instead of saying these are my real costs, he takes whiteout and changes the number to support the numbers. He admits in the district court at the time of plea, I did it because I knew the numbers were not sufficient to support the bid. Whether he was motivated by either just getting the contract at a fair price or whether he was motivated by a desire to get an inflated amount, the bottom line is it shows materiality objectively on its face because he admitted he knew it mattered. The government asked because they wanted to know what his figures were and what his profit would be. Now, in Lindsay, we have a somewhat similar situation arising post-Escobar in the context of private lenders. And in that case, as the court knows, there was a mortgage fraud prosecution based on loan applications that falsely overstated an applicant's income. The defendant in that particular case says I want to put on the same type of evidence that my friend wants to put on. I want the decision maker at the lender to come in and say, well, never mind, it's a lie. It wouldn't have mattered to me. I either wouldn't have looked at it or I would have intentionally disregarded that. The court, this court, post-Escobar, says that evidence is inadmissible, always has been and always will be. What is now admissible on a slight gloss on the traditional materiality standard is that you can have an industry, evidence of how the industry as a whole would treat a particular statement, how it would look at income on loan applications to decide whether or not to make the loan. But you cannot call an individual lender to give subjective testimony about what he would have done because that's contrary to the whole concept of a reasonable decision maker and an objective test not based on idiosyncrasies but rather on whether a statement's intrinsic capabilities  and Judge Wardlaw, that's coming from the Peterson case and I believe you were on that panel a number of years ago. What he is asking you to do is ignore Lindsay because a single Navy decision maker is plainly not an entire industry. The concept behind Escobar is where you have program participation with the federal government, a uniform set of rules and the claim is only impliedly false because it left something out that makes it confusing or misleading. How the government as a monolithic entity has treated that type of failure to disclose a noncompliance may have bearing on it. We are affirmative misstatements in the criminal context. We asked for numbers. He lied. He whited it out. He didn't just lie. He didn't say, look, you goofed up on the type of contract and really what I need is a line item for profit. He deprived the government of the opportunity to go through a principled negotiation based on facts rather than lies. And that was a crime. It still is a crime. It's not infected by any kind of fundamental error that has been created by Escobar, which just talks about the same standard being applied in a somewhat different context. I don't know if I've adequately ---- Suppose we thought that the standard might have made a difference or did make a difference. Suppose we thought that under Escobar this case would come out otherwise. Would Quorum Novus lie? No, because there's no fundamental defect, because this is not skilling. I mean, as I believe Judge Berzon, you pointed out, skilling was a situation where the Supreme Court narrowed the scope of the honest services fraud statute by saying it can only be committed in one of two ways, or two ways rather, and it excluded other theories of guilt under the statute. And Quorum Novus lied at that point because review in court said, in some circumstances you've been convicted on a theory that is no longer a crime. Our statute hasn't changed. That's Herb Ayashi. And other than the skilling cases. Are there any other cases, classic cases, in which Quorum Novus has been granted? I am not aware of any, nor has Mr. Shin's counsel cited any. I ended my brief with a citation to a case that analogizes a Quorum Novus to a Hail Mary. That's truly what it is. What, I'm sorry? To a Hail Mary football pass that inevitably falls short. It's like after everything else has failed, you come to the court and you ask for that kind of relief, and you flood the end zone with all of your receivers, and 99.999% of the time it fails. There is no fundamental error here. The elements of 1001 remain the same. They haven't changed. There's a slight modification or gloss on the law of what materiality is. Why couldn't this be at 2255? He's no longer in custody. Plus, I think it would be barred by the one-year limitation because, as Your Honor knows, the sentencing here is Well, but he could have done it one year after Escobar. If you would accept that it was a watershed change in the law justifying it, which I would argue it is not. All right. Thank you, counsel. We have your point. Thank you, Your Honor. You can have a minute for rebuttal. There are a number of other Ninth Circuit cases where a Quorum Novus has been granted under other circumstances. One is United States v. Taylor, which I believe we've cited. United States v. Walgren is another one. But what I would like to use my one minute for is there is a fundamental misunderstanding about the objective subjective test. In the Raza case, this is at page 617, it says, Even if a false representation might influence a reasonable person, a fraud conviction was not warranted unless the government decision-making body considered the false representation to be material. And then a few paragraphs later, it says, Although the materiality test identified by the Supreme Court and Congress is arguably subjective. And that also means in Lindsay 2, that was not a government entity case either. When they were talking about the objectivity, that was something that was targeted to a private lender. And the last thing that I would say on here is the statement that I talked about with U.S. v. Ficini, which is the old rule, you'll find that on page 1162 of the appendix. It says, Materiality, therefore, is not measured by effect or magnitude. And then when you get to the Escobar case, it says that the materiality does not exist where noncompliance is minor or inconsequential. Those two statements cannot be reconciled. All right. Thank you very much, counsel. Thank you, Your Honor. Shin v. United States is submitted.
judges: Wardlaw, Berzon, Rawlinson